# EXHIBIT 2

Assembly Memorandum

# MUNICIPALITY OF ANCHORAGE
# ASSEMBLY MEMORANDUM

No. AM 164-2021

Meeting Date: March 23, 29021

**From:** ACTING MAYOR

**Subject:** AN ORDINANCE OF THE ANCHORAGE ASSEMBLY AMENDING ANCHORAGE MUNICIPAL CODE TITLE 5, EQUAL RIGHTS, TO UPDATE DEFINITIONS; ADD FAMILIAL STATUS AS A PROTECTED CLASS UNDER THE HOUSING PROVISION; REPEAL CHAPTER 5.25 FAIR HOUSING ACT; ADD NEW SECTIONS; AND MAKE OTHER PROCEDURAL, STRUCTURAL, AND TECHNICAL UPDATES.

Title 5 of the Anchorage Municipal Code is Anchorage's non-discrimination code and home to the Anchorage Equal Rights Commission (AERC). Title 5 contains substantive principles of law about what conduct constitutes unlawful discrimination in the MOA; it also sets forth the procedural rules and practices that the AERC uses in investigating and adjudicating claims of unlawful discrimination. Title 5 is in need of significant revision to update the substantive law, revise and clarify AERC procedures, and eliminate statutory relics and inconsistencies in the text.

**Background:**

The AERC enforces Anchorage Municipal Code section 5.20.020 – Unlawful practices in the sale, rental or use of real property, which prohibits housing discrimination based on race, color, sex, sexual orientation, gender identity, religion, national origin, marital status, age, or physical or mental disability. When a Complainant files a housing discrimination complaint with the AERC, this is the section of code relied upon by the AERC for jurisdiction and to determine unlawful practices.

In 2002, the AERC recommended to the Assembly adoption of Chapter 5.25 – Fair Housing Act. Adoption of this chapter was required for a workshare agreement between the AERC and the U.S. Department of Housing and Urban Development (HUD), similar to AERC's workshare agreement with the Equal Employment Opportunity Commission (EEOC). In Assembly Memorandum 956-2002, the AERC explains that Chapter 5.25 provided a new protected class in housing discrimination cases – familial status – and incorporated the substantive provisions and protections of Title VIII of the Civil Rights Act of 1968, commonly known as the Fair Housing Act (42 USC 3601, et seq.). Based on historical information currently available to the AERC, the aforementioned workshare agreement between the

AERC and HUD never materialized. Nonetheless, Chapter 5.25 remains in Title 5.

Chapter 5.25 includes nine different categories of exceptions in its "lawful practices" section and these exceptions are currently incorporated into Section 5.20.020 by reference. Included in the exceptions is shelters for the homeless. Plaintiffs in *Downtown Soup Kitchen v. MOA et al.* argued that the homeless shelter exception in the housing provision of title 5 should apply to the public accommodation provision as well. In an August 9, 2019 Order granting a preliminary injunction, the United States District Court for the District of Alaska found that Downtown Soup Kitchen was likely to prevail in this argument. *See Downtown Soup Kitchen v. MOA et al., Case No. 3:18-cv-00190-SLG.*

The changes proposed below address legal issues raised by the *Downtown Soup Kitchen* litigation, which resulted in a $100,001 settlement paid by the Municipality.

**Proposal:**

The AERC recommends:

1. Removing chapter 5.25 from Title 5, as it is not a chapter that is cited or relied on by the AERC when writing complaints or conducting investigations;

2. Adding *familial status* to the protected classes under section 5.20.020, since removing chapter 5.25 will remove that protected class;

3. Updating the *public accommodation* definition to include, in part, an organization that accepts public funds; and

4. Balancing the powers of the executive director to provide more oversight and supervision by the nine-member commission, including requiring approval by a panel of 3 commissioners for director's charges and general investigations (complaints initiated by the executive director instead of a member of the public);

The AERC began reviewing title 5 in the summer of 2019 for the above changes, and in that process discovered several other areas in need of updating. These include:

a. Clarifying or modernizing definitions (commission, employer, gender identity, marital status, national origin, staff, substantial evidence) and adding definitions for terms used in title 5 but not previously defined (accusation, complaint);

b. Further detailing conciliation procedures and providing for two-party conciliations between respondent and the AERC in order to achieve public policy relief when complainants have either become unavailable or refuse to conciliate after a reasonable offer (instead of simply dismissing these without achieving any public policy relief);

c. Detailing hearing procedures and allowing for discretion in whether to proceed to hearing with a given case in light of all the circumstances (for example, an unavailable complainant, a complainant who prefers a different forum with a wider array of remedies, legal strategy relating to admissible evidence and standard of proof differences at the hearing stage, overall best use of resources); and

d. Other minor procedural and technical changes.

The AERC has worked closely with the Municipality's Legal Department in drafting these changes and has also consulted with the Disability Law Center for pertinent sections.

There are no economic effects to this ordinance and therefore, pursuant to AMC 2.30.053B.1., no Summary of Economic Effects is attached to this ordinance.

**THE ADMINISTRATION RECOMMENDS APPROVAL.**

| | |
|---|---|
| Prepared by: | Anchorage Equal Rights Commission |
| Approved by: | Mitzi Bolaños Anderson, Executive Director, Anchorage Equal Rights Commission |
| Concur: | Kathryn R. Vogel, Municipal Attorney |
| Concur: | Anna C. Henderson, Municipal Manager |
| Respectfully submitted: | Austin Quinn-Davidson, Acting Mayor |

Attachment A:
    Anchorage Municipal Code Chapter 5.25 – Fair Housing Act