Ruth Botstein
Meagan Carmichael
Assistant Municipal Attorneys
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
Email: uslit@muni.org

Attorneys for Defendants
Municipality of Anchorage, Anchorage Equal Rights Commission,
And Mitzi Bolaños Anderson

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE DOWNTOWN SOUP KITCHEN d/b/a DOWNTOWN HOPE CENTER,<br><br>    Plaintiff,<br><br>vs.<br><br>MUNICIPALITY OF ANCHORAGE, ANCHORAGE EQUAL RIGHTS COMMISION, and MITZI BOLAÑOS ANDERSON, in her Official Capacity as the Executive Director of the Anchorage Equal Rights Commission,<br><br>    Defendants. | Case No. 3:21-cv-00155 SLG |

### AFFIDAVIT OF MITZI BOLAÑOS ANDERSON

1. My name is Mitzi Bolaños Anderson. I am an attorney and the Executive Director of the Anchorage Equal Rights Commission. I have held this position since October 28, 2019.

2.      As AERC director, I was heavily involved with the 2021 revision of Title 5, Anchorage's nondiscrimination code. The AERC is charged with enforcing this ordinance. Revising Title 5 was a longstanding process that began in 2019 and was completed in 2021. In my official capacity as AERC director, I participated, observed, and testified before the Assembly in connection with the Title 5 redraft.

3.      One of the primary goals of the statutory revision was to update, modernize, and improve the procedural aspects of Title 5. The bulk of the changes to the law are procedural. I previously worked for the State of Alaska equivalent of the AERC, and based on that experience, believed that the AERC's procedures could be significantly improved. For example, prior to the revision, a case with substantial evidence of discrimination could remain in conciliation indefinitely, as there was no deadline to either move forward with a hearing or dismiss the case. The revision created timelines to assure that cases continue moving forward timely, as well as other significant procedural improvements. The revised code includes new procedures for motion practice, discovery, public hearings, and subpoenas that should significantly improve the AERC process.

4.      Another aspect of the code revision was to create additional checks on the power of the AERC director. With the changes, the AERC director must seek approval from a panel of three commissioners before filing a director's charge against a particular respondent and before commencing a general investigation of a particular respondent.

5.      The Code revision also was intended to address legal issues raised by the 2018 *Downtown Soup Kitchen* litigation, which resulted in a $100,001.00 settlement paid by the Municipality. That litigation and the events leading up to it raised concern that the

code provided for insufficient oversight of the AERC director. The litigation and the Court's orders also made clear that the code's retention of the unused and outdated Fair Housing Act provisions was confusing and led to unclear AERC enforcement parameters. In the 2018 litigation, these flaws combined to result in significant municipal liability.

6. One significant substantive change in the new code was the deletion of an entire chapter of the old code, the Fair Housing Act. This language originally had been adopted in order to secure a workshare agreement between the AERC and the U.S. Department of Housing and Urban Development, but the agreement never materialized. The chapter contained provisions that the federal government wanted to include in local law had the workshare proceeded, but the resulting chapter was not utilized by the AERC and was duplicative and related confusingly to other parts of the code—a structural problem that the court identified in the 2018 *Downtown Soup Kitchen* litigation. Because the homeless shelter exception was located within the wholly repealed chapter, it was eliminated as part of that process.

7. Many of Title 5's definitions also were updated, including the definition of "public accommodation." This definition was expanded to include organizations that accept public funds that include nondiscrimination contractual requirements. The word "general" was also added before "public" when referring to whom the goods, services, facilities, privileges, advantages or accommodations are extended.

8. The prior Hope Center enforcement efforts and resulting litigation were part of the context of the 2021 Title 5 revision, but the intent was never to revise the code to target Hope Center or to ensure that Hope Center could be prosecuted under the new code.

When the new code was passed, courts were split as to whether homeless shelters qualified as "public accommodations" and I did not have the necessary information about Hope Center or any reason to definitively go through the fact-based analysis required and pre-judge the merits of a theoretical complaint against them.

9. Three weeks after the Municipality adopted its revised nondiscrimination code, the United States Supreme Court decided *Fulton v. City of Philadelphia*, 141 U.S. 1868 (2021). I read this case to narrow the category of "public accommodation" to exclude services that are not readily accessible to the public and instead utilize a customized and selective application or certification process.

10. I have reviewed the Downtown Hope Center's admissions criteria, which were attached as Exhibit 3 to the complaint filed in this case. This document explains that Hope Center rigorously screens applicants for admission—including reviewing medical records, government records, and conducting witness interviews—and Hope Center does not admit applicants unless they meet numerous specified criteria, including being homeless, meeting medical and psychological screening requirements, and agreeing to participate in Christian ministry, prayer, and Bible study. Based on the numerous criteria for admission, the selective nature of the shelter's admission policies, and the required pre-approval process for all potential shelter residents, my view is that, unless it opts to receive public funds with a nondiscrimination requirement, or new federal guidance on the scope of public accommodations is issued, Downtown Hope Center's homeless shelter is not a "public accommodation" under the revised Anchorage Municipal Code.

Affidavit of Mitzi Bolaños Anderson
*Downtown Hope Center v. MOA, AERC*; Case No. 3:21-cv-00155 SLG
Page 4 of 5
Case 3:21-cv-00155-SLG   Document 27-1   Filed 08/16/21   Page 4 of 5

11. The AERC has not received any complaints against Hope Center under the new code, nor has it initiated any proceedings against Hope Center. There are no pending or threatened enforcement matters against Hope Center.

12. Because Hope Center's services fall outside of the scope of the public accommodations category as described by *Fulton*, the AERC has no basis to and does not intend to enforce Title 5's gender identity or sex discrimination provisions against Hope Center's overnight shelter operations unless Hope Center affirmatively decides to enter into contracts that contain nondiscrimination requirements or the federal law changes in such a way as to allow a more expansive definition of the public accommodations category.

Pursuant to Alaska Statute 09.63.020, I hereby certify that I executed this affidavit on July 30, 2021; due to a notary public or other official empowered to administer oaths being unavailable be me, I certify under penalty of perjury that the foregoing is true.

FURTHER YOUR ADDIANT SAYETH NAUGHT.

By: s/ Mitzi Bolaños Anderson
Mitzi Bolaños Anderson
Executive Director, AERC

Certificate of Service
The undersigned hereby certifies that on August 16, 2021, a true and correct copy of the foregoing was served by electronic means through the ECF system.

s/ Amber J. Cummings
Amber J. Cummings, Legal Secretary
Municipal Attorney's Office

Affidavit of Mitzi Bolaños Anderson
*Downtown Hope Center v. MOA, AERC*; Case No. 3:21-cv-00155 SLG
Page 5 of 5
Case 3:21-cv-00155-SLG   Document 27-1   Filed 08/16/21   Page 5 of 5