David A. Cortman, *Pro Hac Vice*
Ryan J. Tucker, *Pro Hac Vice*
Katherine L. Anderson, *Pro Hac Vice*
Jeremiah J. Galus, *Pro Hac Vice*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
dcortman@adflegal.org
rtucker@adflegal.org
kanderson@adflegal.org
jgalus@adflegal.org

Sonja Redmond, AK Bar No. 0605022
LAW OFFICE OF SONJA REDMOND
PO Box 3529
35202 Kenai Spur Hwy.
Soldotna, Alaska 99669
(907) 262-7846
sredmond@greatlandjustice.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE DOWNTOWN SOUP KITCHEN d/b/a DOWNTOWN HOPE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>MUNICIPALITY OF ANCHORAGE, ANCHORAGE EQUAL RIGHTS COMMISSION, and MITZI BOLAÑOS ANDERSON, in her Official Capacity as the Executive Director of the Anchorage Equal Rights Commission,<br><br>Defendants. | Case No. 3:21-cv-00155-SLG<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Fed. R. Civ. P. 65**<br><br>**Oral Argument Requested** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ................................................................................................. 1

ARGUMENT ......................................................................................................... 2

I.     Hope Center has standing to seek a preliminary injunction. .................. 2

     A.  Hope Center faces a substantial and credible threat of enforcement. .................................................................................... 2

          1.     Defendants revised the laws to target Hope Center. ............. 3

          2.     Hope Center cannot comply with the revised laws. .............. 6

          3.     Hope Center faces a substantial likelihood of enforcement. .......................................................................... 7

     B.  Hope Center has shown traceability and redressability. ................... 9

II.    Defendants fail to rebut the need for a preliminary injunction. ............. 9

CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

<u>Cases</u>

*Arizona Right to Life Political Action Committee v. Bayless*,
    320 F.3d 1002 (9th Cir. 2003) .............................................................. 2

*BedRoc Ltd., LLC v. United States*,
    541 U.S. 176 (2004) ................................................................................. 4

*City & County of San Francisco v. Trump*,
    897 F.3d 1225 (9th Cir. 2018) .............................................................. 6

*Downtown Soup Kitchen v. Municipality of Anchorage*,
    406 F. Supp. 3d 776 (D. Alaska 2019) ....................................... passim

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868 (2021) ............................................................................ 4

*Italian Colors Restaurant v. Becerra*,
    878 F.3d 1165 (9th Cir. 2018) ......................................................... 2, 6, 7

*Kearns v. Cuomo*,
    415 F. Supp. 3d 319 (W.D.N.Y. 2019) ................................................ 8

*Lopez v. Candaele*,
    630 F.3d 775, (9th Cir. 2010) ........................................................... 2, 8

*LSO, Ltd. v. Stroh*,
    205 F.3d 1146, (9th Cir. 2000) ....................................................... 2, 3, 6, 7

*North Carolina Right to Life, Inc. v. Barlett*,
    168 F.3d 705, (4th Cir. 1999) ............................................................. 8

*Oncale v. Sundowner Offshore Services, Inc.*,
    523 U.S. 75 (1998) ................................................................................. 5

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ......................................................................... 1, 7, 9

*Vermont Right to Life Committee, Inc. v. Sorrell*,
    221 F.3d 376 (2d Cir. 2000) ............................................................... 1, 8

Statutes

Anchorage Municipal Code § 5.20.010 ............................................................................ 3

Anchorage Municipal Code § 5.20.020 ....................................................................... 4, 5

Anchorage Municipal Code § 5.20.050 ..................................................................... 3, 10

Anchorage Municipal Code § 5.40.010 ............................................................................ 9

Anchorage Municipal Code § 5.50.010 ............................................................................ 9

# INTRODUCTION

Hope Center has standing to seek a preliminary injunction, and Defendants have failed to rebut the need for an injunction. Previously, the real property and public accommodation laws did not apply to Hope Center because of the homeless-shelter exception. But Defendants have since repealed the exception. So the challenged laws now apply, and by their own admission, Defendants repealed the exception to target Hope Center. Their assertion that the laws now do not cover Hope Center strains credulity.

Defendants ask the Court to look the other way on their word that they would leave Hope Center alone—*for now*. But we've been down that road before with the City, yet they targeted Hope Center again. Such a litigation position cannot defeat standing. By their plain text, the laws restrict Hope Center's constitutionally protected speech and activities. And nothing "prevents [Defendants] from changing [their] mind" about enforcement and turning on Hope Center, *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000), just as they did here. Indeed, Defendants created out of thin air a vague and malleable standard to reserve the right to enforce the challenged laws in the future. Moreover, the challenged laws allow *anyone* to file a complaint, subjecting Hope Center to a "universe of potential complainants" and a mandatory investigation process. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) ("*SBA List*"). If Hope Center had standing to challenge these laws before, then it undoubtedly has standing to challenge them now.

1

Having no real arguments on the merits or otherwise, Defendants mischaracterize Hope Center's as-applied arguments as a facial challenge. The Court should reject this shell game and enjoin Defendants.

## ARGUMENT

### I. Hope Center has standing to seek a preliminary injunction.

To establish standing, a plaintiff must show: (1) an injury in fact, (2) traceability, and (3) redressability. *It. Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018). Hope Center easily satisfies these requirements.

#### A. Hope Center faces a substantial and credible threat of enforcement.

Hope Center satisfies the injury-in-fact requirement because it faces a substantial and credible threat of enforcement. "[O]ne does not have to await the consummation of threatened injury to obtain preventive relief." *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). It is sufficient if there is "a credible threat that the challenged provision will be invoked against the plaintiff." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154–55 (9th Cir. 2000).

In assessing the credible threat in the pre-enforcement context, courts examine: (1) "whether the law even applies to the plaintiff"; (2) "whether the plaintiff has shown, 'with some degree of concrete detail,' that she intends to violate the challenged law"; and (3) "the likelihood that the law will be enforced against the plaintiff." *It. Colors Rest.*, 878 F.3d at 1172 (quoting *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010)). Especially in cases that implicate speech—such as this one—"the inquiry tilts dramatically toward a

finding of standing." *LSO*, 205 F.3d at 1155. All of these factors support standing.

### 1. Defendants revised the laws to target Hope Center.

The first factor heavily supports standing because, without the homeless-shelter exception, the challenged laws apply to Hope Center. And Defendants repealed the exception to target Hope Center.

In the previous litigation, this Court held that the prior version of the challenged laws did not apply to Hope Center because of the homeless-shelter exception. *Downtown Soup Kitchen v. Muni. of Anchorage*, 406 F. Supp. 3d 776, 796–97 (D. Alaska 2019). In response, Defendants repealed the homeless-shelter exception. Verified Compl. ("VC") ¶¶ 113–16 (Dkt 1). The challenged laws therefore now apply in full force to Hope Center.

The text is clear. The public accommodation law prohibits "an owner or operator of a public accommodation" from refusing "accommodations, advantages, facilities, benefits, privileges, services or goods" on the basis of "sex" or "gender identity." AMC § 5.20.050. It also prohibits any "communication . . . which states or implies" that services will be denied because of sex or gender identity. *Id.* "[P]ublic accommodation" includes a "facility of any kind" "(1) whose goods, services, facilities, privileges, advantages or accommodations are made available to the general public, or (2) that accepts public funds with non-discrimination contractual requirements." *Id.* § 5.20.010 (Dkt 15-2, at 6).

In the previous case, although the Court ultimately concluded that the prior version of the public accommodation law did not apply to Hope Center,

3
*The Downtown Soup Kitchen v. Municipality of Anchorage*, No. 3:21-cv-00155-SLG

it found that Hope Center had standing because its "intended conduct 'arguably falls within the [provision's] reach.'" *Downtown Soup Kitchen*, 406 F. Supp. 3d at 792–93. The same is true with the current version of the public accommodation law.

The real property law similarly prohibits sex- and gender-identity-discrimination "in a term, condition or privilege relating to the use . . . of real property." AMC § 5.20.020 (Dkt 15-2, at 7). And it similarly prohibits any communication "that indicates any preference, limitation, specification or discrimination based on . . . sex [or] gender identity." *Id.* With the homeless-shelter exception intentionally removed, this provision fully applies to Hope Center. *Cf. Downtown Soup Kitchen*, 406 F. Supp. 3d at 793.

Because the text is clear, that should be the end of the analysis. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). But the legislative history confirms that Defendants intended to target Hope Center by repealing the homeless-shelter exception. *See* VC ¶¶ 112–16. The Assembly Memorandum states that the proposed changes were to "address legal issues raised by the *Downtown Soup Kitchen* litigation." *Id.* ¶ 114; *see also* Assembly Mem. 2 (Dkt 15-3). And the Assembly Chair even expressed hostility to Hope Center, describing its beliefs as "misinformed." VC ¶ 116.

Despite the unambiguous text and evidence of targeting Hope Center, Defendants now deny that the laws apply to Hope Center. Opp'n 15–21, 23–26 (Dkt 27). This is erroneous.

To begin, Defendants contend that Hope Center is not a place of public accommodation under *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021).

4
*The Downtown Soup Kitchen v. Municipality of Anchorage*, No. 3:21-cv-00155-SLG

*See* Opp'n 15–21. But this is a legal finding that the Court would have to make. "[A]t the standing stage, the applicability factor weighs in favor of standing if conduct '*arguably* falls within the [provision's] reach.'" *Downtown Soup Kitchen*, 406 F. Supp. 3d at 797 n.145 (quoting *Lopez*, 630 F.3d at 788). *Fulton* addressed the issue of a privately-run ministry that is open to select people as not being a public accommodation. This court can certainly find the same, but it would be through granting relief to Hope Center, not denying it as Defendants insist. *See id.* at 799–800.

As to the real property law, the main basis for exempting Hope Center from the law in the previous litigation (*i.e.*, homeless-shelter exception) is no longer available. Yet Defendants assert that because the true purpose of the real property law is to prohibit discrimination in the *rental housing market*, it should not apply to homeless shelters. Opp'n at 25. But that argument ignores the fact that Defendants deliberately deleted the law's homeless-shelter exception. *See* VC ¶¶ 112–16. Moreover, the law's application can reach "beyond the principal evil" that the legislators intended to address. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998). Indeed, the real property law's text covers not just rentals but also "a condition or privilege relating to the use" of a real property. AMC § 5.20.020.

Finally, Defendants assert that the real property law does not apply to Hope Center because it "does not apply to places . . . for which housing is merely incidental to a broader purpose." *Id.*; Opp'n 25. But housing is not "merely incidental" to a *homeless* shelter's operations. Rather, it's the whole

5
*The Downtown Soup Kitchen v. Municipality of Anchorage*, No. 3:21-cv-00155-SLG

Case 3:21-cv-00155-SLG   Document 29   Filed 08/23/21   Page 9 of 16

point. *See* VC ¶ 44 (alleging that providing housing is central to Hope Center's mission).

### 2. Hope Center cannot comply with the revised laws.

The second factor also supports standing. This examines whether there is "an articulated, concrete plan" to fail to comply with the law. *It. Colors Rest.*, 878 F.3d at 1174. And in speech cases, "plaintiffs may carry their burden of establishing injury in fact when they provide adequate details about their intended speech." *Id.* (quoting *Lopez*, 630 F.3d at 787).

Here, Hope Center sufficiently showed that it cannot—and will not—allow biological men to sleep next to women who have suffered trauma and abuse, because of its "religious beliefs and desire to create a safe and secure environment" for these women, Laurie Decl. ¶¶ 26, 39 (Dkt 15-4), who feel uncomfortable sleeping in the same room with biological men due to past trauma, J.A. Decl. ¶ 7 (Dkt 15-5); M.I. Decl. ¶ 6 (Dkt. 15-6). *See also* VC ¶¶ 124, 126 (continuing to direct biological men to other shelters); *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1237 (9th Cir. 2018) (finding standing when the local "policies [were] presently in conflict with" the challenged federal policies). Moreover, Hope Center showed that it would once again "make its admissions policy clear by posting it on its grounds and on its website" if not for the challenged laws' publication ban. VC ¶¶ 127–31; *see also LSO*, 205 F.3d at 1156 (finding it "sufficient" that the challenged law "was likely to impede" the plaintiff's protected First Amendment activities). "This is enough to show a concrete plan." *It. Colors Rest.*, 878 F.3d at 1174.

### 3. Hope Center faces a substantial likelihood of enforcement.

The third factor also heavily favors finding standing. *See id.* Critically, in cases implicating speech, when the plaintiff is "forced to modify [its] speech and behavior to comply with the law, . . . [s]uch self-censorship may be sufficient injury" even without a pending enforcement action. *Id.* (internal quotation marks omitted). In addition, "the threat of future enforcement . . . is substantial" when there is "a history of past enforcement." *SBA List*, 573 U.S. at 164; *LSO*, 205 F.3d at 1155 (past enforcement "is important in a standing inquiry"). And "[t]he credibility" of the threat of enforcement is "bolstered" when "the universe of potential complainants is not restricted to state officials." *SBA List,* 573 U.S. at 164.

Here, Hope Center has already suffered a significant injury because the challenged laws forced it to self-censor. *See It. Colors Rest.*, 878 F.3d at 1173. "To avoid additional risk of liability, . . . Hope Center has stopped posting its admissions policy on its grounds and on its website." VC ¶ 128; *see also* Laurie Decl. ¶¶ 36–37. That alone is enough to find standing.

What's more, there is a history of past enforcement. Defendants instituted various proceedings against Hope Center when the laws did not even apply to Hope Center because of the homeless-shelter exception. *Downtown Soup Kitchen*, 406 F. Supp. 3d at 784–85, 796–97 (detailing a lengthy history of enforcement). Now Defendants have repealed that protection—and invoked Hope Center as justification for doing so. Thus, Defendants' "past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" *SBA List*, 573 U.S. at 164.

7
*The Downtown Soup Kitchen v. Municipality of Anchorage*, No. 3:21-cv-00155-SLG

Although the threat of enforcement is substantial, Defendants ask the Court to look the other way on the public accommodation law, because they currently do not intend to enforce it against Hope Center. Opp'n 23. This purported disavowal is "a mere litigation position" that should be discounted for three reasons. *Lopez*, 630 F.3d at 788.

*First*, it is manifestly unreasonable given the expansive reach of the laws' text and the legislative history. *See supra* pp. 3–4.

*Second*, "the presence or absence of an express disavowal" is "not . . . determinative . . . because such a disavowal is not legally binding." *Kearns v. Cuomo*, 415 F. Supp. 3d 319, 333 n.8 (W.D.N.Y. 2019). "[T]here is nothing that prevents the [Defendants] from changing [their] mind." *Vt. Right to Life Comm.*, 221 F.3d at 383. Indeed, Defendants say that "the leadership of the AERC has changed and the new director" is inclined to leave Hope Center alone. Opp'n 23. But what about the *next* director? And what prevents this director from reversing course and enforcing the laws' plain text? To give any weight to Defendants' purported disavowal would to "plac[e] [Hope Center's] asserted First Amendment rights 'at the sufferance of'" Defendants. *Vt. Right to Life Comm.*, 221 F.3d at 384 (quoting *N.C. Right to Life, Inc. v. Barlett*, 168 F.3d 705, 711, 710 (4th Cir. 1999)).

*Third*, Defendants' purported disavowal promises nothing. As a threshold matter, the AERC's purported disavowal still reserves the right to look to "federal guidance" to enforce the laws against Hope Center and to investigate whether Hope Center accepts public funds. Anderson Aff. ¶ 10 (Dkt 27-1). Moreover, the challenged laws allow *anybody* to file a complaint.

8

*The Downtown Soup Kitchen v. Municipality of Anchorage*, No. 3:21-cv-00155-SLG

*See* AMC § 5.40.010 (Dkt 15-2, at 10). So any man seeking access to Hope Center's shelter may file a complaint. And the AERC is *required* to commence an investigation. AMC § 5.50.010 (Dkt 15-2, at 12); *Downtown Soup Kitchen*, 406 F. Supp. 3d at 783 (describing the mandatory investigation and fact-finding conference). This "bolster[s]" the credibility of enforcement by enabling a "universe of potential complainants" to initiate proceedings against Hope Center. *SBA List*, 573 U.S. at 164. And because of the publicity of this dispute and because of the ongoing requests from biological men to stay overnight, VC ¶¶ 94, 124, Hope Center is an "easy target[.]" *SBA List*, 573 U.S. at 164.

### B. Hope Center has shown traceability and redressability.

Defendants do not dispute traceability and redressability. Nor could they. *See Downtown Soup Kitchen*, 406 F. Supp. 3d at 793–94 (finding redressability and traceability). The challenged laws target Hope Center's admission policies and practices. VC ¶¶ 117–22, 127–29. Thus, the injury to Hope Center's free-exercise and free-speech rights, and the intimate-association rights of the women it serves, is traceable to them and will be redressed by a favorable ruling.

## II. Defendants fail to rebut the need for a preliminary injunction.

Defendants fail to put forth any meaningful arguments on the preliminary-injunction factors. Instead, Defendants repeat the same argument that the challenged laws do not apply to Hope Center and that it has no need for an injunction for that reason. Opp'n 27–28, 34. As explained above, this is meritless.

Defendants also mischaracterize all of Hope Center's claims as a facial challenge that comes with a more demanding standard. Opp'n 29. This too misses the mark. Hope Center has raised primarily as-applied arguments. VC ¶ 151 (free-exercise claim "as applied to" Hope Center"); ¶¶ 163–64 (free-speech claim both facially and "as applied to Hope Center"); ¶ 173 (expressive-association claim "as applied to" Hope Center"); ¶ 184 (intimate-association claim "as applied to the women at Hope Center[ ]"); ¶ 190 (due-process claim "facially and as applied to Hope Center").

Hope Center does not dispute that the challenged laws can have constitutional applications in other situations—only not as to Hope Center. *See* Hope Ctr. Mem. 18 (Dkt 15-1). To be sure, the Verified Complaint also includes a facial challenge to the public accommodation law's publication ban, AMC § 5.20.050(A)(2)(b), because its definitions are vague and overbroad. VC ¶¶ 164, 190. But that is to be litigated later. For now, Hope Center seeks only to enjoin the ban "as applied to Hope Center's women's shelter." Hope Ctr. Mem. 18. Defendants categorically fail to engage with these as-applied arguments, effectively conceding that Hope Center is likely to prevail on the merits of its as-applied claims.

## CONCLUSION

Defendants' litigation position is too little, too late. It asks this Court to trust it not to go after Hope Center, until it decides otherwise—once again. The Court should enjoin Defendants from enforcing the real property and public accommodation laws against Hope Center.

10

*The Downtown Soup Kitchen v. Municipality of Anchorage*, No. 3:21-cv-00155-SLG

Case 3:21-cv-00155-SLG   Document 29   Filed 08/23/21   Page 14 of 16

Respectfully submitted this 23th day of August 2021.

                s/ *Ryan J. Tucker*
                David A. Cortman, *Pro Hac Vice*
                Ryan J. Tucker, *Pro Hac Vice*
                Katherine L. Anderson, *Pro Hac Vice*
                Jeremiah J. Galus, *Pro Hac Vice*
                ALLIANCE DEFENDING FREEDOM
                15100 N. 90th Street
                Scottsdale, Arizona 85260
                (480) 444-0020
                dcortman@adflegal.org
                rtucker@adflegal.org
                kanderson@adflegal.org
                jgalus@adflegal.org

                Sonja Redmond, AK Bar No. 0605022
                LAW OFFICE OF SONJA REDMOND
                PO Box 3529
                35202 Kenai Spur Hwy.
                Soldotna, Alaska 99669
                (907) 262-7846
                sredmond@greatlandjustice.com

                *Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2021, the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Municipality of Anchorage
623 W. 6th Avenue, Suite 730
Anchorage, AK 99501

Anchorage Equal Rights Commission
632 W. 6th Avenue, Suite 110
Anchorage, AK 99501

Mitzi Bolaños Anderson
Executive Director
Anchorage Equal Rights Commission
632 W. 6th Avenue, Suite 110
Anchorage, AK 99501

Respectfully submitted this 23rd day of August 2021.

*s/ Ryan J. Tucker*
Ryan J. Tucker
*Attorney for Plaintiff*
